UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BECCA E. FRANCO, an individual,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation,<br><br>Defendant. | Case No. 4:17-cv-00228-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. INTRODUCTION

This matter comes before the Court on Defendant State Farm Mutual Automobile Insurance Company's ("State Farm") Motion for Partial Summary Judgment. Dkt. 17. State Farm asks this Court to grant summary judgment in its favor on Plaintiff Becca Franco's bad faith claim. Having reviewed the record and briefs, the Court finds that the parties have adequately presented the facts and legal arguments. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without a hearing. Dist. Idaho Loc. Civ. R. 7.1(d)(2)(ii). For the reasons set forth below, the Court finds good cause to GRANT the Motion.

# II. BACKGROUND

On October 23, 2015, Franco was involved in a motor vehicle accident on I-15 in Bingham County, Idaho, while driving her 2003 Honda CRV. The third-party driver,

Patrick Lepage, was wholly at fault. At the time of the accident, Franco's vehicle was insured under an insurance policy with State Farm ("the Policy"). The Policy included underinsured motor vehicle coverage up to $50,000. Specifically, the Policy provided that State Farm "will pay compensatory damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *underinsured motor vehicle*." Dkt. 17-8, at 19. The Policy also included medical payment coverage up to $5,000.

On November 3, 2015, Franco submitted a claim to State Farm under the Policy. State Farm responded that same day seeking additional information. On November 11, 2015, Tim Gresback, Franco's attorney, sent a letter to State Farm asking it to open an underinsured motorist claim. On January 15, 2016, State Farm advised Gresback that Franco had exhausted the $5,000 medical payment coverage benefits under the Policy.

On April 27, 2016, Gresback sent State Farm two settlement offers he had received from third party insurers: $100,000 from American Family Insurance Group under a policy held by Betty Hansen (the owner of the third-party vehicle), and $50,000 from Viking Insurance Company of Wisconsin under a policy held by Patrick Lepage (the driver of the third-party vehicle). Both third-party insurers offered their policy limits. On June 2, 2016, State Farm authorized Franco to settle with these third-party insurers for the offered amounts.

On June 14, 2016, Gresback sent State Farm a "Settlement Proposal" valuing Franco's damages as follows: $122,099.66 in total medical bills, $10,153.71 in lost wages, and $1,008.34 in family travel expenses, for a total of $133,261.71 in special damages. The Settlement Proposal also valued "General Damages" including "[p]ast and

future pain and suffering, loss of enjoyment of life, impairment, disfigurement, emotional distress, and future medical bills" at "policy limit." Accordingly, Gresback requested that State Farm pay Franco the $50,000 policy limit for underinsured motor vehicles.

On July 12, 2016, State Farm responded, indicating it would waive the $5,000 medical payment coverage subrogation against the liability settlement. Based on the $155,000.00 that Franco had already received (comprised of the $150,000 settlements from the third-party insurers, plus the $5,000 medical payment coverage from State Farm), State Farm indicated to Gresback that "[w]ith all the information [received] to date, . . . [and after] contractual write-downs of the medical bills, it appear[s] Ms. Franco has been fully compensated." Dkt. 17-20. Neither party has provided an "auto injury evaluation" form that shows how State Farm was valuing Franco's past and likely future damages as of July 12, 2016.

On August 11, 2016, Gresback sent a "request for reconsideration" to State Farm. Among other things, the request stated, "Earlier we provided you with the health insurance contractual adjustment. In so doing, we did not intend to suggest that her medical damages or overall loss should be reduced thereby." Dkt. 17-21.

In a September 8, 2016, letter, State Farm again stated that it was "waiv[ing] the Medical Pay Coverage subrogation," but that, based on its "evaluation of the claim and the amounts the insured has recovered from underlying sources," it "believed that [Franco] ha[d] been fully compensated for the loss." Dkt. 17-24. Neither party has provided an "auto injury evaluation" form that shows how State Farm was valuing Franco's past and likely future damages as of September 8, 2016.

On February 28, 2017, Gresback sent State Farm a "final policy limit demand." Dkt. 20-9, at 2. The demand stated Franco's "medical expenses now total $124,459.83," but that "she is likely to have a lifetime of residuals." *Id.* at 2-3. State Farm received the final demand on March 3, 2017. State Farm asserts that it then re-evaluated the claim. State Farm's reevaluation is outlined in an email chain between two State Farm employees, Bill Paseman and Justin Wright, from mid-April 2017. This evaluation identified that although Franco's billed medical expenses totaled $124,459.83, due to contractual write-downs, only $54,686.29 had been paid, for a difference of $69,773.54. Dkt. 17-26. The evaluation also examined Franco's "demand" and "medical reports" and determined she was likely entitled to between $65,000 and $115,000 in general damages for pain and suffering. State Farm set out these evaluation numbers in a formalized "auto injury evaluation" form dated June 15, 2017. Notably, State Farm's low-end estimate of Franco's past pain and suffering increased to $95,000 on this form. This evaluation form reads as follows:

| **Current Evaluation Range of Damages** | | |
|---|---:|---:|
| **Elements of Recovery** | **Low** | **High** |
| Past Medical Bills | $54,686.29 | $124,459.83 |
| Future Medical Bills | $0.00 | $0.00 |
| Past Wage Loss | $10,200.00 | $10,200.00 |
| Future Wage Loss | $0.00 | $0.00 |
| Past Pain/Suffering | $95,000.00 | $115,000.00 |
| Future Pain/Suffering | $0.00 | $0.00 |
| =Subtotal | **$159,886.29** | **$249,659.83** |

Dkt. 17-28, at 5.

Subtracting the $155,000 Franco had already recovered from its low-end estimate, State Farm determined Franco was entitled to $4,886.29. *Id.* at 6. From the high-end estimate, State Farm subtracted both the $155,000 that Franco had already recovered and the $69,773.54 difference between the billed for and contracted for medical expenses. *Id.* Thus, State Farm determined Franco was entitled to $24,886.29 in gross damages at the high end. *Id.*

On April 27, 2015, State Farm made a settlement offer to Franco in the amount of $4,886.29 (the low-end estimate). Dkt. 17-29. On April 28, 2017, State Farm made a settlement offer in the amount of $25,000 (in excess of the high-end estimate). Dkt. 17-30.

Franco filed this lawsuit on May 15, 2017. She asserted two claims: breach of contract and bad faith. Dkt. 1.

On June 19, 2017, State Farm paid the $25,000 offer it had offered on April 28, 2017. Dkt. 17-31. On October 4, 2017, State Farm received additional medical records from Franco during discovery in this case. Dkt. 17-32. After reviewing these records, on November 8, 2017, State Farm paid Franco an additional $25,000. *Id.*

On February 16, 2018, State Farm filed the pending Motion for Partial Summary Judgment. The motion is now fully briefed and ripe for decision.

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court's role at summary judgment is not "to weigh the evidence and

determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering a motion for summary judgment, this Court must "view[] the facts in the non-moving party's favor." *Id.* To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (citation omitted). Accordingly, this Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

### IV. ANALYSIS

#### A. Subject Matter Jurisdiction

The Court first addresses the issue of subject matter jurisdiction (sua sponte), as it has some concerns regarding whether it even has the power to hear this case.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.*

(internal citation omitted). "Federal Rule of Civil Procedure 12(h)(3) provides that a court may raise the question of subject matter jurisdiction, *sua sponte*, at any time during the pendency of the action, even on appeal." *Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002). Importantly, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

In her Complaint, Franco states "[t]his Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2)." Section 1332(a)(2) provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of a State and citizens or subjects of a foreign state . . . ." Putting aside the question of whether State Farm qualifies as a "citizen or subject of a foreign state,"[1] the Court has concerns about whether § 1332's amount in controversy requirement has been satisfied. "The amount in controversy includes the amount of damages in dispute, as well as attorney's fees, if authorized by statute or contract." *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005), *as amended on denial of reh'g and reh'g en banc* (Feb. 13, 2006). "[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 276 (1977).

---

[1] The Complaint states State Farm is "a company domiciled in Illinois." Dkt. 1, at 2.

<mark>MEMORANDUM DECISION AND ORDER - 7</mark>

The Ninth Circuit has explained this "legal certainty test makes it very difficult to secure a dismissal of a case on the ground that it does not appear to satisfy the jurisdictional amount requirement." *Naffe v. Frey*, 789 F.3d 1030, 1040 (9th Cir. 2015) (citation omitted). "Only three situations clearly meet the legal certainty standard: 1) when the terms of a contract limit the plaintiff's possible recovery; 2) when a specific rule of law or measure of damages limits the amount of damages recoverable; and 3) when independent facts show that the amount of damages was claimed merely to obtain federal court jurisdiction." *Id.*

In this case, Franco generally alleged in her Complaint as follows:

> 34. As a proximate and/or producing result of Defendant's bad faith and breach of contract, Plaintiff has suffered substantial damages including special damages, general damages, consequential damages, attorney fees and the costs incident to prosecuting this action, all in an amount to be proven at trial.
> 35. The damages complained of may have been caused by multiple factors but Defendant's bad faith and breach of contract were substantial factors in causing the damages.
> 36. Considering each of the elements of damage, including special, general, punitive, and attorney's fees, Plaintiff has suffered damages in an amount in excess of $75,000.00.

Dkt. 1, at 6. Thus, as an initial matter, Franco has provided very few specifics about her damages request. Nevertheless, it is clear with regard to the breach of contract claim that the most Franco could recover at the time she filed her Complaint was $50,000—the limit on her underinsured motor vehicle coverage.[2] With regard to the bad faith claim, Franco claims damages including "the loss of use associated with having the benefit paid timely,

---

[2] All of which Franco has already recovered at this point.

MEMORANDUM DECISION AND ORDER - 8

personal time and expense necessitated by the bad faith refusal to timely pay this claim, other consequential damages and intentional infliction of emotional distress." *Id.* It is not apparent to the Court that these damages, if proven at trial, would exceed $25,000 (the difference between the $75,000 threshold requirement and the $50,000 potential recovery under the breach of contract claim). However, the damages requested under the bad faith claim do not fall under one of the "three situations [that] clearly meet the legal certainty standard." *Naffe*, 789 F.3d at 1040. Thus, although the Court has its concerns, it accepts that § 1332(a)'s amount in controversy requirement has been met.

### B. Rule 7.1

The Court next notes that Franco has not complied with Local Rule 7.1(c)(2) in defending against the Motion for Partial Summary Judgment, which requires as follows:

> In responding to a motion for summary judgment under Federal Rule of Civil Procedure 56, in addition to the requirements contained in Federal Rule of Civil Procedure 56(c)(1), the responding party shall also file a separate statement, not to exceed ten (10) pages, of all material facts which the responding party contends are in dispute.

Dist. Idaho Loc. Civ. R. 7.1(c)(2). Franco has not included the required separate statement indicating which material facts are in dispute. Nevertheless, the Local Rules further provide:

> In motions brought under Federal Rule of Civil Procedure 56, if the non-moving party fails to timely file any response documents required to be filed, such failure shall not be deemed a consent to the granting of said motion by the Court. However, if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Federal Rule of Civil Procedure 56(c) or Local Rule 7.1(b)(1) or (c)(2), the Court nonetheless may consider the uncontested material facts as undisputed for purposes of consideration of the motion, and the Court may grant summary judgment if the motion and supporting materials—including the

> facts considered undisputed—show that the moving party is entitled to the granting of the motion

Dist. Idaho Loc. Civ. R. 7.1(e)(2) (emphasis added). In other words, Franco's failure to comply with Rule 7.1 is not detrimental to her claim, but it may hurt her chances of success as the Court may assume there is no dispute of fact.[3]

### C. Bad Faith Claim

Finally, the Court addresses whether Franco's bad faith claim should survive summary judgment.

"[I]nsurance companies have a duty to act in good faith with their insureds, and . . . this duty exists independent of the insurance contract and independent of statute." *White v. Unigard Mut. Ins. Co.*, 730 P.2d 1014, 1016 (Idaho 1986) (emphasis and citation omitted). "In order for a first-party insured to recover on a bad faith claim, the insured must show: '1) the insurer intentionally and unreasonably denied or withheld payment; 2) the claim was not fairly debatable; 3) the denial or failure to pay was not the result of a good faith mistake; and 4) the resulting harm is not fully compensable by contract damages.'" *Parks v. Safeco Ins. Co. of Illinois*, 376 P.3d 760, 766 (Idaho 2016) (citation omitted). In addition, the insurer must have actually breached a duty it owed under a contract. *Id.* The burden of proof is on the insured in a bad faith claim. *Robinson v. State Farm Mut. Auto. Ins. Co.*, 45 P.3d 829, 832 (Idaho 2002).

---

[3] The Court admonishes counsel to comply with Rule 7.1 in all future filings with this Court.

State Farm primarily argues that Franco cannot succeed on her bad faith claim because her claim was "fairly debatable."[4] "Fairly debatable means that there was a reasonable dispute or legitimate question over the eligibility, amount or value of the claim." *Cedillo v. Farmers Ins. Co.*, 408 P.3d 886, 892 (Idaho 2017). "An insurer does not act in bad faith if it challenges the validity of a 'fairly debatable' claim." *McGilvray v. Farmers New World Life Ins. Co.*, 28 P.3d 380, 386 (Idaho 2001) (citation omitted). "When a claim is fairly debatable, the insurer is entitled to dispute the claim and will not be deemed liable for failure to pay the claim." *Id.* (citing *inter alia Drake v. Milwaukee Mutual Ins. Co.*, 236 N.W.2d 204, 208 (Wis. 1975) (finding that an insurer is entitled to debate a fairly debatable claim, whether the debate concerns a matter of fact or law)).

In response, Franco first argues that even if portions of her claim were fairly debatable, State Farm had an obligation to pay all undisputed amounts under the policy throughout the settlement negotiation process. In support of this argument, Franco cites *Inland Group of Companies, Inc. v. Providence Washington Insurance Co.*, 985 P.2d 674 (Idaho 1999), and *Weinstein v. Prudential Prop. & Cas. Ins. Co.*, 233 P.3d 1221, 1244 (Idaho 2010). These cases do stand for the proposition that an insurer's "contractual duty of good faith require[s] that it timely pay the undisputed sums owing under [an] insurance policy" in a timely fashion. *Weinstein*, 233 P.3d at 1244. In other words, an insurer cannot wait until the full amount of a claim is certain to pay the claim—"[t]he fact that a

---

[4] State Farm also argues that Franco has not created a genuine issue of material fact as to the first element of her bad faith claim—whether it intentionally and unreasonably denied or withheld payment. Franco does not directly address this argument, so the Court does not either.

portion of the claim is fairly debatable does not justify failing to pay the undisputed portions." *Id.* at 1245. Moreover, "[t]he fact that there is uncertainty as to whether [an insured] will [incur] future [medical expenses] does not make her past medical expenses fairly debatable." *Id.* Based on this law, the Court will have to determine if, at any point during the settlement process, State Farm failed to pay undisputed sums it owed Franco.

State Farm insists that all aspects of Franco's claim were fairly debatable. It also asserts that Franco erroneously assumes there was a "date certain" when any portion of her claim ceased to be "fairly debatable." Franco, through her attorney, Gresback, requested money from State Farm on three separate occasions. If there were any undisputed sums State Farm owed Franco at the time Gresback made these requests, State Farm should have timely paid those. What constitutes timely payment is a question of fact the Court cannot decide at this stage.

Gresback's made his final request for funds on February 28, 2017. The Court examines this request first because it is the one with the highest valuation. All previous requests had a lower valuation, as Franco's medical expenses increased over time. It is also the only request for which State Farm provided the Court with a formal auto injury evaluation form. That form, laid out previously, reads as follows:

| **Current Evaluation Range of Damages** | | |
| --- | ---: | ---: |
| **Elements of Recovery** | **Low** | **High** |
| Past Medical Bills | $54,686.29 | $124,459.83 |
| Future Medical Bills | $0.00 | $0.00 |
| Past Wage Loss | $10,200.00 | $10,200.00 |
| Future Wage Loss | $0.00 | $0.00 |
| Past Pain/Suffering | $95,000.00 | $115,000.00 |
| Future Pain/Suffering | $0.00 | $0.00 |
| =Subtotal | **$159,886.29** | **$249,659.83** |

Contrary to what State Farm would have the Court believe, there are some aspects of this valuation that are undisputed. First, even if it was not clear whether Franco was entitled to the "billed for" or "contracted for" past medical expenses, it was clear that Franco was entitled to the lesser of those two amounts, or $54,686.29. In addition, the parties did not dispute that Franco was entitled to $10,200.00 in lost wages. Nevertheless, the $155,000 Franco had already received more than covered the sum of these two figures—$64,886.29. All of the remaining "elements of recovery" appear to be fairly debatable. Even Franco's past pain and suffering, which State Farm valued at $95,000, was based on State Farm's guesses and estimates. In other words, this amount was not definite and there remained "legitimate question[s] over the . . . amount or value of the claim." *Cedillo*, 408 P.3d at 892; *cf. Anderson v. Farmers Ins. Co. of Idaho*, 947 P.2d 1003, 1006 (Idaho 1997) ("Settlement offers are not undisputed amounts . . . . They are merely offers to compromise a disputed claim."), *disapproved of on other grounds by Martin v. State Farm Mut. Auto. Ins. Co.*, 61 P.3d 601 (Idaho 2002). Thus, although parts of Franco's claim were undisputed, Franco had already received compensation for those portions. All portions of Franco's claim for which Franco may have recovered funds from

State Farm (namely, any damages over $155,000) were still "fairly debatable." State Farm did not act in bad faith if these funds were fair debatable.

Nonetheless, Franco tries to save her claim with several additional arguments. She argues next that State Farm acted in bad faith by "assigning a value of $0 [to] Franco's future pain and suffering and future medical expenses." Dkt. 20, at 14. Franco has failed to cite any legal authority supporting this conclusion. More importantly, this argument fails to create a genuine issue of material fact as to whether the value of her future pain and suffering or future medical expenses were fairly debatable. Franco made no specific demand on State Farm for potential future medical expenses or future pain and suffering and she has provided no appraisal to the Court of her sum certain future damages. Thus, the fact that State Farm valued these elements of recovery at $0 does not save her bad faith claim.

Next, Franco argues State Farm acted in bad faith when it "presented a conditional low-ball offer" to her "as a means to leverage its insured." Dkt. 20, at 16. Franco first asserts that such practices are prohibited by Idaho law. *See, e.g.*, Idaho Code § 41-1329(7) ([C]ommitting or performing any of the following acts or omissions intentionally . . . shall be deemed to be . . . an unfair or deceptive act or practice in the business of insurance: . . . Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds[.]"). As evidence to support this argument, Franco presents an internal State Farm communication stating that the initial settlement was low, and that Franco's attorney would likely incur significant travel costs if she decided to file

suit. Franco also points to the fact that State Farm ultimately paid her the full $50,000 she initially requested after she initiated this suit.

The Court is sympathetic to Franco's claim, but again she has not cited a case to support her argument. This Court—a federal Court—cannot sua sponte alter Idaho state law by adopting Franco's argument. This Court cannot read a statutory prohibition as alternative version of a bad faith claim. Franco does cite one case, *Weinstein*, arguing that it stands for the proposition that violation of Idaho's Unfair Claim Settlement Practices Act,[5] Idaho Code § 41-1329, is "direct evidence of bad faith." Dkt. 20, at 17. In fact, *Weinstein* clarified that "the Act does not give rise to a private right of action whereby an insured can sue an insurer for statutory violations committed in connection with the settlement of the insured's claim." 233 P.3d at 1235 (citation omitted). However, it also held that the Act set forth "the standards of the insurance industry and may be considered by [a jury] to determine whether there was an extreme deviation from industry standards which warrants punitive damages." *Id.* Thus, even assuming State Farm's first offer was low for industry standards, Franco's bad faith claim still fails as it cannot stand on this fact alone.

Moreover, this fact does not change the reality that, at the time State Farm made the offer, there were portions of Franco's claim that were still fairly debatable. Indeed, as State Farm received additional medical records from Franco supporting a finding of additional damages, State Farm increased its offer and eventually paid the policy limit.

---

[5] Franco erroneously referred to this statute as "Idaho's Fair Settlement Practices Act."

Insisting on documentation to support an insurance claim does not mean State Farm acted in bad faith.

Finally, Franco argues State Farm acted in bad faith by unnecessarily delaying payment. Specifically, Franco asserts State Farm caused delays in payment by offering "conditional" settlements, first of $4,886.29 on April 27, 2017, and then of $25,000 on April 28, 2017. She also asserts State Farm refused to pay anything until she filed this suit. In support of her argument Franco cites *Chester v. State Farm Insurance Company*, 789 P.2d 534 (Idaho 1990). *Chester* is distinguishable from this case. Most importantly, the *Chester* court found the insurance company "delayed payment on the *undisputed* claims." *Id.* at 541 (emphasis added). As explained above, Franco has not shown that State Farm refused to pay undisputed claims. Rather, State Farm did not offer to pay claims that were still fairly debatable. In addition, in *Chester* there was evidence that (1) the insurer failed to properly supervise a claims adjuster, which caused the plaintiff's filed to remain "virtually inactive for months," and (2) the insurer used tactics to "starve out" the plaintiff, by sending him various forms and repeatedly rejecting them as "improperly filled out." *Id.* Both of these events supported a finding of an unreasonable delay. *Id.* The *Chester* court did note that the plaintiff believed the insurer's final settlement offer came with "strings attached;" in other words, the plaintiff believed accepting the insurer's offer "would preclude him from suing for the disputed amounts." *Id.* While the court made note of this, there is nothing in *Chester* that indicates such a conditional offer alone constitutes bad faith. *Id.* Yes, State Farm made settlement offers to pay portions of Franco's claims that were still fairly debatable. However, any delay

MEMORANDUM DECISION AND ORDER - 16

caused by such settlement offers does not constitute bad faith because these amounts were not undisputed. Therefore, this delay also does not save Franco's bad faith claim.

## V. ORDER

THE COURT HEREBY ORDERS:

1. State Farm's Motion for Partial Summary Judgment (Dkt. 17) is GRANTED.

DATED: August 7, 2018

_____
David C. Nye
U.S. District Court Judge